section.   Matter of Ritter Place, 139 App. Div. 473, 124 N. Y. Supp. 351.   The question there considered was the validity of the assessment roll which is the subject of strict statutory direction.   The rule for the construction of deeds was not discussed or decided.   The decision therefore is not helpful in determining the questions here presented.

Order appealed from affirmed, and motion denied, with costs to respondent.

Order unanimously affirmed, with costs.   All concur.

---

(76 Misc. Rep. 10.)

MISSOURI PAC. RY. v. MERCANTILE TRUST CO.

(Supreme Court, Special Term, New York County.   February, 1912.)

1. CONTRACTS (§ 143*)—CONSTRUCTION—INTENTION OF PARTIES.

The court, in construing a contract, must seek to arrive at its meaning by a consideration of it in its entirety, keeping in view its object.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 723; Dec. Dig. § 143.*]

2. CORPORATIONS (§ 123*)—BONDS—MORTGAGES.

A trust indenture, executed by a railroad corporation to secure its bonds, recited that it had deposited with a trustee 10 shares of stock of a railroad company for each $1,000 par value of bonds issued, and that the railroad corporation pledged to the trustee all the stock of the railroad company for which certificates indorsed in blank for transfer should be deposited with the trustee, and provided that the bonds should be delivered by the trustee whenever the railroad corporation transferred to the trustee certificates of stock in amounts of $1,000 par value or multiples thereof.   For convenience the railroad corporation at various times delivered to the trustee stock in excess of the par value of the bonds called for.   The directors of the railroad corporation adopted a resolution authorizing a pledge with the trustee from time to time of such amounts of the stock of the railroad company as might be necessary to secure the delivery of bonds in such amounts as might be required.   The stockholders adopted a resolution authorizing the officers to deposit with the trustee stock necessary to secure bonds under the indenture.   Held, that the authority of the officers under the trust indenture and resolutions was limited to pledging with the trustee only so much stock as might be necessary to secure bonds required, and stock deposited in excess of such amount was recoverable from the trustee.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 612, 618; Dec. Dig. § 123.*]

3. CORPORATIONS (§ 426*)—ACTS OF OFFICERS—RATIFICATION BY STOCK-HOLDERS.

A ratification by stockholders of the acts of directors is not shown, unless it is shown that the stockholders knew the facts at the time of the ratification.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1708, 1710–1716; Dec. Dig. § 426.*]

Action by the Missouri Pacific Railway against the Mercantile Trust Company to recover possession of stock.   Judgment for plaintiff.

Chadbourne & Shores, for plaintiff.

Alexander & Green (Charles C. Deming and William Woart Lancaster, of counsel), for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GIEGERICH, J.   The action is brought to recover possession of 27,450 shares, of the aggregate par value of $2,745,000, of the stock of the St. Louis, Iron Mountain & Southern Railway Company.   The defendant claims the right to retain the stock as trustee under a trust indenture made between the defendant and the plaintiff's predecessor, which was a corporation bearing the same name as the plaintiff.   The trust indenture referred to is dated February 15, 1905, and, among other things, contains the following:

"Whereas, the railway company has duly determined and resolved to secure the payment of the principal and interest of said bonds by executing this trust indenture and by depositing with the Mercantile Trust Company, as trustee, subject to the trusts and conditions hereof, ten (10) shares of the capital stock of St. Louis, Iron Mountain & Southern Railway Company for every $1,000 par value of said bonds issued hereunder."

And the following:

"Article Second. The bonds authorized to be issued under and secured by this trust indenture shall immediately upon the execution and delivery hereof. or 'as soon thereafter as may from time to time be required by the railway company, be certified by the trustee and delivered to the railway company, or upon its written order under its corporate seal, executed by its president or one of its vice presidents and by its secretary or treasurer, as follows: Whenever the railway company shall tender or cause to be tendered to the trustee hereunder certificates for any of the shares of the capital stock of St. Louis, Iron Mountain & Southern Railway Company in amounts of one thousand dollars ($1,000) par value or any multiples thereof, accompanied by instruments of transfer in blank or indorsed for transfer in blank, the trustee shall receive said certificates and in exchange therefor shall certify and deliver to the railway company or upon its order, as aforesaid, an amount of bonds issued under this trust indenture equal in face value to the par value of the shares of capital stock so tendered and received, but the total amount of bonds at any one time issued and outstanding under this trust indenture shall never exceed the principal amount of $50,-000,000.   Such shares of capital stock received by the trustee under this section shall be held by it subject to all the terms and provisions of the trust indenture as security for the pro rata payment of the bonds from time to time issued and outstanding hereunder, together with the interest thereon."

The railway company further agreed to cause at least a majority of all the capital stock of the said St. Louis, Iron Mountain & Southern Railway Company to be pledged under the trust indenture and deposited with the trustee.   Shortly after the execution of the trust indenture the plaintiff delivered to the defendant 250,000 shares of stock, of the par value of $25,000,000 and received from the defendant bonds to the amount of $25,000,000.   Thereafter, at various times, the plaintiff delivered to the defendant three several certificates of stock for 50,000 shares each, and in each case such delivery was specified to be as follows:

"To you [meaning the defendant], as trustee as aforesaid, to be held by you subject to all the terms and conditions of the above named trust indenture."

With the delivery of the first of such three certificates there was a request made upon the defendant in the following form:

"Will you please certify and deliver to this company $1,656,000 par value bonds under said trust indenture against an equal amount in face value of said shares deposited with you, namely, $1,656,000?"

Thereafter, on identical requests for deliveries, except as to the amounts, stretching over an interval of several months and in varying installments, other deliveries were called for, until upwards of $3,500,-000 of bonds had been delivered against the $5,000,000 of stock so deposited. Then, on May 22, 1908, the plaintiff deposited another certificate, of the par value of $5,000,000, with a similar letter of transmissal, and the next day called for and received a delivery of upwards of $4,000,000 of bonds, and thereafter, stretching over a period of several months and in various installments, the plaintiff called for and received various other deliveries, until the aggregate amount of bonds so delivered approximated the value of the stock up to that time pledged. Thereafter, and on November 16, 1908, the plaintiff, with a like letter of transmittal, delivered to the defendant another certificate of stock of the par value of $5,000,000, the receipt of which was acknowledged by the defendant in the following form:

"New York, November 16, 1908.

"The Missouri Pacific Railway Company, A. H. Calef, Esq., Treasurer, No. 195 Broadway—Dear Sir: We beg to acknowledge the receipt of your favor of even date handing us certificate No. 03218 for 50,000 shares of the capital stock of the St. Louis, Iron Mountain & Southern Railway Company in the name of George J. Gould, trustee, and indorsed in blank, to be held by this company, trustee, as collateral to your company's mortgage securing the 40-year 4% gold loan bonds.

"Very truly yours     [Signed]  Guy Richards, Secretary."

Thereafter, pursuing the same course as previously followed, and in each case upon similar orders for deliveries of bonds, specifying the amount and the fact that they were to be "against an equal amount in face value of the stock," the plaintiff called for and the defendant delivered bonds in numerous installments and comparatively small amounts stretching over a period of upwards of a year, until bonds of the par value of $2,255,000 had been issued against the last certificate of stock so deposited, leaving 27,450 shares of stock, of the aggregate par value of $2,745,000, against which no bonds had been issued and delivered. The aggregate amount of bonds up to that time delivered was $37,255,000, and the aggregate amount of stock deposited and held in pledge against such bonds, if the amount of stock in controversy is deducted, would leave a similar total, namely, $37,255,000 of stock, which amount constituted a majority of the stock then or at any time issued and outstanding. In fact, it seems to be conceded that the first deposit of $25,000,000 of stock constituted a majority of the outstanding stock.

The defendant claims that it is its right and duty to retain the stock in controversy. One ground upon which this claim is based is the broad character of the granting clause contained in the trust indenture, which is as follows:

"The Missouri Pacific Railway Company, party of the first part hereto, has granted, bargained, sold, assigned, transferred, and pledged, and by these presents doth grant, bargain, sell, assign, transfer, and pledge, unto the Mercantile Trust Company, as trustee, upon the trusts and subject to the terms and conditions in this trust indenture expressed, all and singular the shares of the par value of $100 each of the capital stock of St. Louis, Iron Mountain & Southern Railway Company, for which certificates, indorsed in blank

for transfer or accompanied by instruments of transfer in blank, shall from time to time be deposited with said trustee by the railway company subject to the provisions of this trust indenture."

[1, 2] I cannot agree, however, that the clause just quoted has the sweeping effect claimed for it. The meaning of the contract must be arrived at by a consideration of it in its entirety, keeping in view its object. To my mind it is quite clear that the intention of the agreement was that stock should be pledged in the amount of the bonds issued, and in no greater amount. For purposes of convenience the plaintiff did at various times deliver to the defendant stock in excess of the par value of the bonds called for; but such delivery did not place the stock so delivered under the operation and lien of the trust agreement. Until bonds were called for against the stock so delivered, such delivery constituted merely a bailment, and such stock was held by the defendant subject to the order of the plaintiff, and such order could take the form either of calling for bonds, which would thereby subject stock of an equal par value to the lien of the trust indenture, or it could call for the return of any balance of stock that had not thus been brought under such lien. Even if the officers of the defendant company had attempted in plain terms and by unequivocal acts (which they did not) to transcend the terms of the trust indenture and to deposit stock in excess of the amount of bonds called for, they would have been clearly without authority to bind the corporation by such acts. The authority of the officers in the matter under consideration is contained in a resolution of the board of directors of the plaintiff company, adopted on the 8th day of December, 1904, and being as follows:

"Further resolved, that upon the authorization of said trust indenture by the stockholders this company and the execution and delivery thereof by the proper officers of this company, said officers be, and they are, hereby authorized to deposit and pledge with the trustee thereof from time to time such amounts of the capital stock of St. Louis, Iron Mountain & Southern Railway Company owned by this company as may be necessary to secure the certification and delivery of bonds under said trust indenture in such amounts as may be required."

Thereafter the stockholders adopted a resolution on the same subject as follows:

"Further resolved, that upon the execution and delivery of said trust indenture by the proper officers of this company said officers be, and they are, hereby authorized to deposit and pledge with the trustee thereof from time to time such amounts of the capital stock of St. Louis, Iron Mountain & Southern Railway Company as may be necessary to secure the certification and delivery of bonds under said trust indenture in such amounts as may be required."

There is nothing in the by-laws of the company which could be construed as enlarging the authority thus conferred upon the officers. It is plain, therefore, that their authority was limited to depositing and pledging with the trustee only so much stock as might be necessary to secure the certification and delivery of bonds in such amounts as might be required from time to time, and the only amount of capital stock that was ever necessary to deposit and pledge to secure the delivery

of any bónds was an amount equal to the amount of the bonds, and any attempt to deposit and pledge any stock in excess of such amount would have been unauthorized and null. It might be further remarked that there is no provision whatever anywhere in the trust indenture indicating in any way that it was contemplated by the parties that any additional security of any character should be deposited except par value of stock for par value of bonds issued. If there were any such provision in the trust indenture in its original form, or any such had been added by subsequent modification, then any further security thus deposited and pledged would be for the benefit of the bonds up to that time issued, and could not be wiped out or absorbed by the subsequent issue of bonds against such additional security. The defendant does not, however, make any claim that the plaintiff has not a right to call for bonds against the stock in question.

It should be further observed that there is no question of estoppel in this case. The value of the bonds already issued would be the same, whether the plaintiff were permitted to withdraw the stock in controversy or should call for the delivery of bonds against it. In either event each bond of $1,000 would have as security ten shares of stock, nothing more and nothing less, just as the trust indenture specifies and contemplates. The only provision of the trust indenture relative to the amount of stock that should be pledged is that a majority of the issued and outstanding stock should be so pledged, and there is no dispute but that this requirement has been complied with, thus placing in the hands of the trustee what was stipulated for, namely, control of the company through the possession of a majority of its stock. The trust indenture contains a provision that the railway company shall have no right to secure the withdrawal and release from the trust of any of the stock pledged under the agreement except upon the redemption and payment of all the bonds; but this does not affect the stock in question, because, as I have endeavored to show above, that stock has not been pledged, but merely delivered to the defendant as bailee.

The defendant also claims that the stockholders have ratified the acts of the officers by virtue of the following resolution adopted at each annual meeting held since the execution of the trust indenture, namely:

"Resolved, that each and all of the resolutions, acts, and proceedings of the board of directors and of the executive committee of the Missouri Pacific Railway Company heretofore had and adopted at their several meetings, respectively, whenever and wherever held, since March 8, 1904, as shown by their records in the minute book of this company, and each and all of the acts of the officers of this company in carrying out and promoting the purposes, objects, and interests of this company, be, and the same are, hereby approved, ratified, and confirmed, and fully adopted as and the same are hereby made the acts and doings of this corporation."

[3] The validity of the ratification claimed to have been given by such a resolution depends upon knowledge of the facts on the stockholders' part (Bowers v. Male, 111 App. Div. 209, 97 N. Y. Supp. 722), and such knowledge is not shown in this case. Furthermore, if it were shown that the stockholders had been informed of every act of their officers, there would still be no ground on which to base a claim that there had been a ratification of unauthorized acts, because, as

pointed out above, the things done by the officers cannot fairly be construed as attempting to subject the stock in question to the operation of the agreement of indenture until the delivery of bonds against such stock should be called for.

There should be judgment for the plaintiff, with costs. The requests to find of the respective parties have been passed upon as indicated in the margins. Let a complete copy of the decision be prepared and submitted for my signature upon two days' notice of presentation, with proof of service on the other side.